2026 IL App (3d) 260262

Opinion filed August 13, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| THE PEOPLE OF THE STATE OF | ) | Appeal from the Circuit Court |
| ILLINOIS, | ) | of the 21st Judicial Circuit, |
| | ) | Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-26-0262 |
| v. | ) | Circuit No. 25-CF-819 |
| | ) | |
| LUCAS A. WALTERS JR., | ) | Honorable |
| | ) | William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Presiding Justice Hettel and Justice Bertani concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Defendant, Lucas A. Walters Jr., appeals from the Kankakee County circuit court's pretrial detention order, arguing that, based on new evidence presented at the hearing on the motion for relief, the court erred in detaining him. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        On December 1, 2025, defendant was charged with unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2024)). The State filed a verified petition to deny pretrial release, alleging defendant was charged with a detainable offense and that his release posed

a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(6) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(6) (West 2024)).

¶ 4        The factual basis proffered by the State provided that, on November 27, 2025, officers responded to a call regarding a domestic battery around 9 p.m. When they arrived on the scene, officers observed defendant holding a firearm and entering a residence where defendant's five-year-old child was located. Further investigation disclosed that defendant had pointed a firearm at a minor, R.T., after an argument they had in front of the residence. R.T. was a 16-year-old relative of defendant who lived with him in Michigan. They were visiting for Thanksgiving. Officers established a perimeter around the residence, and one officer observed defendant attempt to exit a second-story window. When defendant was advised to show the officers his hands, he retreated into the house. Defendant was then seen in a different window of the house. After officers directed all nearby individuals away from the residence, they ordered defendant to exit. Defendant eventually exited the residence and was ordered to lie on the ground. Defendant refused to put his hands behind his back but was eventually taken into custody. A gun was found in the bedroom of defendant's five-year-old child.

¶ 5        A pretrial risk assessment indicated that defendant was a level two risk, with level six being the highest possible risk. He lived in Michigan with his son, his wife, and her two cousins. He also had a 15-year-old child who lived in Arkansas. Defendant indicated that, if released, he could live with his mother. Defendant's driver's license was revoked, and he relied on his wife for transportation. Defendant was self-employed performing landscaping and snow removal. At the time of the offense, defendant was on probation in Michigan for a 2024 offense of felony fleeing a police officer and driving on a revoked license. Defendant had other Michigan convictions for unlawful possession of a controlled substance, driving while under the influence, use of a

2

controlled substance, fleeing a police officer, operating a motor vehicle while impaired, and operating a motor vehicle while his license was suspended or revoked. He also had a robbery conviction from Arkansas for which he spent five years in prison.

¶ 6    At a hearing on the petition, the State provided the factual basis and observed that defendant chose to willfully disregard the orders and commands of officers. It argued that defendant posed a threat to the community and R.T. where he brandished the firearm in public and pointed it at R.T. The State noted that defendant had a lengthy history of felonies and knew he could not legally possess a firearm. It further indicated uncertainty as to whether defendant would be able to go on pretrial services because he lived in Michigan. Defense counsel countered that defendant denied possessing a firearm. He did not live in the house, and no one saw him put the firearm in the child's bedroom where it was recovered. Counsel asked that defendant be released on GPS monitoring, though counsel acknowledged that she was unsure if defendant could be placed on GPS monitoring unless he was able to stay with someone in Illinois.

¶ 7    The court found the State met its burden by clear and convincing evidence. In doing so, it noted that officers observed defendant with a firearm in his hand, which provided evident proof that defendant committed the offense. Moreover, the court found that defendant posed a threat where he was walking around a residential neighborhood with a handgun and had pointed it at a minor. Defendant refused to show his hands and attempted to exit the residence through a second-story window. No conditions could be placed on defendant to mitigate the threat he posed where he was on probation at the time of the offense and had a lengthy criminal history including fleeing police officers, which showed his inability to follow rules and regulations.

¶ 8    Defendant filed a motion for relief arguing that the presumption was not great that he committed the offense based on a witness statement, an officer's body camera footage, and the

lack of evidence that defendant was in the room where the firearm was recovered. Moreover, the motion argued that less restrictive conditions existed that could mitigate any danger his release might pose.

¶ 9    A hearing was held on the motion on May 4, 2026, during which proffered and physical evidence was introduced for the first time. Defense counsel introduced body camera footage from one officer purporting to show defendant drop a cell phone and not holding a firearm. Defendant also introduced a letter from his wife stating that he did not have a firearm and that what was dropped on the video was a cell phone. Counsel proffered that defendant's fingerprints were not found on the firearm and there was no direct connection between defendant and the firearm, though it was acknowledged that the firearm traced back to Michigan. A character reference letter was also admitted regarding defendant's interactions with his children and their need for his continued care. Counsel believed that this case amounted to a misunderstanding. Counsel asked that defendant be released to Michigan, noting that he could be required to stay away from Illinois and GPS monitoring could show if he attempted to improperly enter the state.

¶ 10    The State's proffer also included new facts. It indicated that officers received a 911 call regarding defendant threatening family members on which defendant could be heard yelling in the background that "he will smoke both of you all." Officers observed defendant with a firearm, and defendant disregarded commands given to him by the officers. The State noted that defendant's wife's letter was different than what she had told police. R.T. told officers that defendant threatened to kill him and brandished the firearm, describing the firearm as having unique blue characteristics consistent with the one recovered from the house. The firearm was recovered from the upstairs bedroom where defendant had been observed trying to jump out of the window. Moreover, the State indicated that the firearm trace showed the firearm was purchased

4

approximately 15 minutes from where defendant lived and was reported stolen by the registered owner approximately 10 minutes from where defendant lived. The State otherwise reiterated facts proffered at the initial hearing and asked that the court's detention order stand.

¶ 11        The court indicated that it had an opportunity to review the initial order and all the information presented at both hearings. It indicated that the body camera footage was dark and hard to see. The court indicated that it saw no reason to depart from the initial order, given the allegations of the threats, defendant being seen in the bedroom where the firearm was found, defendant's refusal to exit the residence, and the unique blue markings described by R.T. that were on the recovered firearm. The court stated,

> "If this was something that hadn't been used involved in the threat, maybe we're in a different story, but I do believe that this is what—the type of case that the Pretrial Fairness Act [(725 ILCS 5/art. 110 (West 2024); Pub. Act 101-652 (eff. Jan. 1, 2023); Pub. Act 102-1104 (eff. Jan. 1, 2023))] was designed to keep people locked up on, people who are making threats with firearms."

¶ 12                                   II. ANALYSIS

¶ 13        On appeal, defendant argues that he should be released with conditions because the proof was not evident or presumption great that he committed the alleged offense and no conditions could mitigate any threat posed by his release.[1] He further contends that the court's detention decision should be reversed because its decision was not individualized to defendant. In support of his arguments, defendant points to the evidence he introduced at the motion for relief hearing that he was holding a cell phone and not a firearm and certain comments made by the court. As

---

[1]Defendant did not argue in his motion for relief that he does not pose a threat.

the hearing on the State's petition to deny pretrial release contained no live witness testimony, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 14     Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence that (1) the proof is evident or presumption great that defendant committed a detainable offense; (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk; and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court may consider. *Id.* §§ 110-6.1(g), 110-5; *People v. Mikolaitis*, 2024 IL 130693, ¶¶ 20-21.

¶ 15     Initially, we consider the propriety of introducing new evidence at the hearing on the motion for relief. Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) requires that, before appealing from an order denying, revoking, or granting pretrial release, the party appealing

> "shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived."

¶ 16     We note that there is a split in the appellate court regarding this issue. The First District has determined that it is improper to introduce new evidence at a hearing on a motion for relief considering that the focus of the motion for relief is to frame on appeal contentions of error that occurred in the detention hearing being appealed. *People v. Williams*, 2024 IL App (1st) 241013,

6

¶ 28. However, the Fourth District has held that new information is appropriately considered at the motion for relief hearing. *People v. Kelly*, 2026 IL App (4th) 260002, ¶¶ 41-47. In doing so, it noted that (1) the supreme court chose not to label the motion as a motion to reconsider, (2) Rule 604(h)(2) denotes the possibility of errors occurring for the first time at the hearing on the motion for relief, thus suggesting the possibility of new evidence, and (3) a hearing on a motion for relief amounts to a subsequent detention hearing, which allows for additional evidence presented. *Id.* ¶¶ 44-46.

¶ 17 We agree with the First District that it is improper to introduce new evidence in support of a motion for relief. The hearing on the motion for relief does not contemplate a second, full pretrial detention hearing. See *Williams*, 2024 IL App (1st) 241013, ¶ 28. Instead, "the purpose of Rule 604(h)(2) is to frame issues on appeal more efficiently, give trial courts the opportunity to correct errors, and streamline the appeals process." *Id.* The pertinent questions raised in a motion for relief concern whether any errors occurred at the initial hearing or whether the State failed to meet its burden on each of the three propositions based on the evidence proffered. In this way, a motion for relief is similar to a motion to reconsider. *Id.* ¶ 55 (Van Tine, J., specially concurring). The purpose of a reconsideration motion is to raise any changes in the law, errors in the court's previous application of existing law, and newly discovered evidence *not available at the time of the initial hearing*. *Id.* Likewise, a motion for relief does not provide the opportunity to " 'redo' " an unfavorable initial detention hearing by presenting evidence that could have been presented earlier. *Id.* "By way of analogy, a defendant could not use a motion to reconsider sentence to present mitigation witnesses he could have presented at the sentencing hearing, and a defendant could not use a motion for new trial to call witnesses he could have called at the trial itself." *Id.*

7

¶ 18        We disagree with the *Kelly* court's interpretation of the portion of the rule stating "any issue not raised in the motion for relief, *other than errors occurring for the first time at the hearing on the motion for relief*, shall be deemed waived." (Emphasis added.) Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). We do not read this language as suggesting that new evidence may be introduced in the motion for relief hearing. Rather, this language contemplates that the appellate court may review procedural errors occurring at the motion for relief hearing.

¶ 19        If a defendant wishes to introduce new evidence in support of release, the procedurally appropriate place to do so is at a section 110-6.1(i-5) hearing, where the court is required to consider whether "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2024). A defendant or the State could then file a motion for relief from that finding, giving the circuit court the ability to correct any issues stemming from the introduction of the new evidence and frame the issues for appeal.

¶ 20        Considering only the evidence proffered at the initial detention hearing and the related arguments made in the motion for relief hearing, we must decide whether the proof was evident that defendant committed the offense and if there were conditions to mitigate the threat he posed. We conclude that the court did not err in detaining defendant. First, the proof was evident or presumption great that defendant committed the detainable offense of UPWF. The proffer indicated that defendant had pointed a firearm at a minor and an officer had observed defendant holding a firearm. Defendant had been previously convicted of felony offenses and was unable to legally possess a firearm. Second, no conditions could be placed on defendant to mitigate the threat he posed. Defendant was on probation at the time he committed this offense, was a felon unable

8

to possess a firearm, had a significant criminal history, and was uncooperative with law enforcement at the scene of the crime. This demonstrated defendant's inability to follow the edicts of the court and the unlikelihood that he would follow any conditions placed upon him. Moreover, defendant lived in Michigan, and there is nothing in the record to indicate that he could live with someone in Illinois to facilitate attending Illinois court dates or that pretrial services could accommodate an out-of-state defendant in this way.

¶ 21　　　Further, we disagree with defendant's contention that the circuit court was predisposed to detaining him and that the detention decision was not individualized, as required by law. See *id.* § 110-6.1(f)(7) (court's detention decision "must be individualized, and no single factor or standard may be used exclusively to order detention"). In denying defendant's motion for relief, the circuit court stated: "If [the gun] was something that hadn't been used involved in the threat, maybe we're in a different story, but I do believe that this is what—the type of case that the Pretrial Fairness Act was designed to keep people locked up on, people who are making threats with firearms." While defendant was only charged with possession of a weapon by a felon, the fact that defendant threatened R.T. with armed violence was certainly relevant to whether conditions existed to mitigate his release. Moreover, when the circuit court's statement is considered in the context of all the other evidence referenced by the court, it is clear that its detention decision was individualized.

¶ 22　　　In affirming the instant detention decision, we note that, even if we were to consider the additional evidence presented at the hearing on the motion for relief, our conclusion would be the same. Defendant explains how he helps care for his special needs son and has a job. He then focuses in large part on the video evidence that he characterizes as showing him carrying a cell phone and not a gun, along with his wife's statement indicating the same. The State, however,

9

countered with how R.T.'s specific description of the firearm held while threatening him was consistent with the gun found in the bedroom where defendant was observed, the verbal threats made by defendant captured on the video, and how the recovered firearm had been purchased and stolen close to where defendant resided in Michigan. Taken together, the State's evidence continued to meet its burden on each of the propositions.[2]

¶ 23                                    III. CONCLUSION

¶ 24         The judgment of the circuit court of Kankakee County is affirmed.

¶ 25         Affirmed.

---

[2]Under Illinois Supreme Court Rule 604(h)(8) (eff. Apr. 15, 2024), the deadline for this court to issue its decision in this case was August 12, 2026. Rule 604(h)(8), however, authorizes us to extend the deadline for good cause shown. We have done so in this case.

*People v. Walters*, 2026 IL App (3d) 260262

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, No. 25-CF-819; the Hon. William S. Dickenson, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Cristina Law Merriman, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |